MASANOBU NORO, Plaintiff-Appellant, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)  No. 62771

Opinion filed April 7, 1977.

Ben Goldwater, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an administrative review proceeding brought upon a decision of the Police Board of the City of Chicago (Board) discharging plaintiff, Masanobu Noro, from his position as a patrolman. The circuit court affirmed plaintiff's discharge. Plaintiff appeals and contends: (1) a policeman may not be discharged for invoking his fifth amendment privilege against self-incrimination before a Federal grand jury; (2) the Board's findings and decision are against the manifest weight of the evidence; and (3) the judgment of the circuit court is against the manifest weight of the evidence. We affirm. The pertinent facts follow.

O December 13, 1971, plaintiff appeared as a witness before a Federal grand jury in Chicago, pursuant to a subpoena. Plaintiff was one of a number of Chicago police officers subpoenaed. The grand jury was investigating alleged irregularities among employees of the Chicago Police Department that might have been violations of Federal criminal law, and more particularly the Hobbs Act (18 U.S.C. § 1951 (1970)), which prohibits, among other things, interference with commerce by extortion.

At the grand jury hearing plaintiff was advised of his constitutional rights, after which the following exchange occurred:

"Q. Mr. Noro, how are your employed?

A. I refuse to answer that question because I sincerely and honestly believe that my answer may tend to incriminate me. The right not to answer your question is afforded me by the Fifth Amendment of the United States Constitution.

Q. Do you have an attorney, Mr. Noro?

A. I refuse to answer that question.

Q. I don't know how the name of your—

A. I refuse to answer that question.

Q. I don't know how the name of your attorney can incriminate you, Mr. Noro. You wouldn't like to tell the Grand Jury who your attorney is?

A. I refuse to answer that question because I sincerely and honestly believe that my—

Q. You are a member of the Chicago Police Department, are you not?

A. I refuse to answer that question because I sincerely and honestly believe that my answer might tend to incriminate me."

A week later, on December 20, 1971, plaintiff was summoned to appear at the office of the Internal Affairs Division of the Chicago Police Department where he was interrogated by Deputy Chief Robert J. Lynskey concerning his appearance before the Federal grand jury. Plaintiff was asked if he had refused to answer any questions directed to him by the prosecutor or by any juror, and he responded:

"Yes, only one question. But it did not pertain to or involve my conduct as a police officer of the City of Chicago. I was then excused."

Plaintiff was then asked if he had refused to answer any questions relating to his conduct as a police officer. He responded by stating:

"No, I only refused to answer the question as I have stated above, and it did not pertain to or involve my conduct as a Police Officer for the City of Chicago. I was then excused."

On December 30, 1971, plaintiff was suspended from duty as a patrolman. Thereafter, on January 26, 1972, formal charges were filed against plaintiff, seeking his dismissal. He was charged with violating the following rules of the Chicago Policy Department:

Rule 2—Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department.

Rule 3—Any failure to promote the Department's efforts to accomplish its goals.

Rule 5—Failure to perform a duty.

Rule 13—Making a false report, written or oral.

Rule 51—Failing to give evidence before the Grand Jury, Coroners inquest, or in court or before any governmental administrative body including the Police Board when properly called upon to do so. Refusing to testify on the grounds that such testimony might incriminate the member, or refusing to sign a waiver of immunity when requested to do so by a superior officer.

After a trial before a hearing officer, the Board found plaintiff guilty on all charges and ordered him to be separated and discharged from his position as a patrolman. Plaintiff then filed a complaint for administrative review with the circuit court.

A hearing on plaintiff's complaint was held in the trial court. No attempt was made by the Board at the hearing to maintain the validity of

the charges under Rule 51, insofar as they were based upon plaintiff's fifth amendment right not to incriminate himself, recognizing that this provision in Rule 51 had been declared unconstitutional in *Confederation of Police v. Conlisk* (7th Cir. 1973), 489 F.2d 891, *cert. denied*, 416 U.S. 956, 40 L. Ed. 2d 307, 94 S. Ct. 1971 (1974). Rather, the arguments of both counsel were directed at the Board's findings under Rules 3 and 13.

The circuit court affirmed the findings and decision of the Board, expressly stating in its final order:

> "[I]t is adjudged that the Findings and Decision of the Police Board be and is hereby sustained as to Findings 3 & 13 of the Findings and Decision and the Decision of the Police Board discharging plaintiff from the Police Department is sustained by said findings, the Court finding that the affirmance of the suspension is based upon Plaintiff's refusal to cooperate with the Police Department and not as a result of the Plaintiff's invocation of his Fifth Amendment rights before a Federal Grand Jury."

It is from this judgment that plaintiff now appeals.

OPINION

■■ Plaintiff initially contends that a policeman may not be discharged for invoking his fifth amendment privilege against self-incrimination. We agree that this is unquestionably the law, as settled in *Confederation of Police v. Conlisk*. As noted, however, the trial court specifically found that plaintiff's discharge was based upon his failure to cooperate with the police department and not upon his invocation of his fifth amendment rights before the grand jury. Thus, our decision today is limited to a consideration of this finding by the trial court in relation to the Board's findings under Rules 3 and 13.

■■ It is plaintiff's further contention, however, that the Board's findings under Rules 3 and 13 were tainted by the impermissible findings under Rule 51. In support of this contention plaintiff first cites *Confederation of Police*. The court there found Rule 51 unconstitutional, and held that the remaining rules involved (2, 5 and 6) were unconstitutional as applied in the case because they were used only in conjunction with Rule 51 in effecting the discharge of plaintiffs.

> "The underlying 'violation' in each case was the exercise of the privilege against self-incrimination before the grand jury, which was prohibited by Rule 51." 489 F.2d 891, 895.

Examination of the record before us, however, leads us to the conclusion that the circumstances presented in the instant case are distinguishable from those presented in *Confederation of Police*. I the case at bar, the Board's findings upon which plaintiff's discharge was affirmed were as follows:

"6. Respondent, as charged herein, contrary to the Rules and Regulations of the Department of Police, is guilty of violating Rule 3 'Any failure to promote the Department's efforts to achieve its goals', by his total disregard of the fundamental goal of Department members to maintain the highest standard of personal integrity and ethics, in that on December 20, 1971, when being questioned by his superior relative to his testimony before the Federal Grand Jury on December 13, 1971, he did attempt to deceive the Department and his superior by implying that he had cooperated with the Grand Jury by stating that he had just refused to answer only one question which was not related to his duties as a police officer, when in fact, other than giving his name and address, he refused to answer every question including the question, 'You are a member of the Chicago Police Department, are you not?'

\* \* \*

8. Respondent, as charged herein, contrary to the Rules and Regulations of the Department of Police, is guilty of violating Rule 13, 'Making a false report, written or oral', in that on December 20, 1971, when being questioned by a superior officer relative to his appearance and testimony before the Federal Grand Jury December 13, 1971, he stated that he refused to answer only one question which was not related to his duty as a police officer, when in fact, other than stating his name and address, he refused to answer each and every question, including the question, 'You are a member of the Chicago Police Department, are you not?' "

It is apparent to us that the underlying violation in these charges was plaintiff's attempted deception of his superior officers at his hearing on December 20, 1971, before the Internal Affairs Division of the Chicago Police Department. Thus, unlike *Confederation of Police*, all the charges in the instant case are not founded upon plaintiff's refusal to cooperate with the grand jury. Rather, the two charges set forth above are based solely upon plaintiff's failure to cooperate with his superior officers. This is the underlying violation in the instant case. If plaintiff had reported to his superiors that he had been questioned by the grand jury concerning his conduct as a police officer, but that he had declined to answer on fifth amendment grounds, there would have been no grounds for disciplining him.

In further pursuit of his contention plaintiff cites *Dwyer v. Police Board* (1975), 31 Ill. App. 3d 246, 334 N.E.2d 239, in which the court found that plaintiff's discharge could not be founded upon Rules 2, 3 or 13 where these had been used in conjunction with Rule 51. However, we find *Dwyer* distinguishable from the instant case. Initially, we note that the

court's opinion in *Dwyer* does not set forth the specific findings by the Board under Rules 3 and 13. Thus, unlike the instant case, we cannot say that the charges in *Dwyer* were truly based upon deception of superior officers. Secondly, it is not apparent in *Dwyer* that plaintiff did attempt to deceive his superiors. He stated that he was not asked any questions relating to his conduct as a police officer, nor was he asked if he was employed as a police officer. There was no evidence that these statements, given to his superiors, were false or misleading. Thus, the court in *Dwyer* did not address the questions which we face in the instant case concerning false reports to superior officers.

We find the more recent decision by this court in *Thanasouras v. Police Board* (1975), 33 Ill. App. 3d 1012, 339 N.E.2d 504, *cert. denied*, 429 U.S. 851, 50 L. Ed. 2d 125, 97 S. Ct. 141 (1976) controlling in the instant case. In *Thanasouras* plaintiff, a police officer, refused to answer all questions posed to him before a Federal grand jury, including the question of whether he was employed by the Chicago Police Department. He later told his commanding officer that the questions which he had refused to answer were not related to his conduct or duty as a police officer. This court affirmed plaintiff's discharge, finding that:

> "[T]he board heard competent evidence to sustain its conclusion that plaintiff had given a false report to his commanding officer, in violation of Rule 13, when in answer to a question whether he had refused to answer any questions before the grand jury relating to his conduct as a police officer, he replied that the questions he refused to answer did not relate to his duty as a police officer. The board considered this to be either a statement that he had answered all questions in that regard or that the questions did not concern his conduct as a police officer." 33 Ill. App. 3d 1012, 1014, 339 N.E.2d 504, 506.

The instant case and *Thanasouras* are factually similar, and a similar conclusion is appropriate here. As in *Thanasouras*, the fact that the Board also discharged plaintiff for violating Rule 51 does not dilute or taint the violations which underlay plaintiff's dismissal under Rules 3 and 13—deceiving his superior officers. As we there stated:

> "[I]t appears clear to us that the privilege against self-incrimination does not include the right to make a false report. (*United States v. Knox*, 396 U.S. 77, 82, 24 L. Ed. 2d 275, 90 S. Ct. 363.) Since the finding of a violation of Rule 13 is valid for the reasons stated above, adequate grounds for dismissal existed [citations], and we affirm the judgment." 33 Ill. App. 3d 1012, 1014, 339 N.E.2d 504, 506.

Plaintiff's second contention is that the Board's findings and decision are

against the manifest weight of the evidence. In large part, this contention is answered by our adherence to *Thanasouras*.

■■ It is established law in Illinois that in disciplinary proceedings against a policeman, a single valid finding of a violation of departmental rules will authorize dismissal. (*Thanasouras v. Police Board; Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32.) The Board in the instant case had evidence before it that plaintiff had refused to answer the question, "You are a member of the Chicago Police Department, are you not?" The Board also heard evidence that plaintiff had reported to his superior officers that he had only refused to answer one question, which question was not related to his conduct as a police officer. As in *Thanasouras*, we find that in light of such evidence, we cannot say that the Board's finding that Rule 13 was violated was against the manifest weight of the evidence. In addition, we find that such evidence also supports the Board's findings that plaintiff attempted to deceive and mislead his superior officers, in violation of Rule 3. Thus, adequate grounds for dismissal existed.

Plaintiff's final contention is that the judgment of the circuit court is against the manifest weight of the evidence. In view of our findings that the Board's decision was not against the manifest weight of the evidence, it is apparent that this final contention is without merit. The court's only function in reviewing orders of administrative agencies is to consider the record to determine if the findings and orders are against the manifest weight of the evidence. (*Parker v. Department of Registration & Education* (1955), 5 Ill. 2d 288, 125 N.E.2d 494; *Taylor v. Civil Service Com.* (1961), 33 Ill. App. 2d 48, 178 N.E.2d 200.) In the instant case, the trial court correctly fulfilled this function by upholding the Board's findings of violations under Rules 3 and 13, and thus correctly affirmed plaintiff's dismissal from the Chicago Police Department.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.