ARTHUR DOUGLAS, Plaintiff-Appellant, *v.* W. N. DANIELS *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-335

Opinion filed September 22, 1978.

Price & Banks, of Chicago (Michael Goldstein and Michael Kreloff, of counsel), for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff, Arthur Douglas, appeals from the trial court's affirmance of the Chicago Police Board's decision to discharge him from the force. He presents the following issues for review: (1) whether admissions suppressed in a prior criminal proceeding are admissible in a subsequent civil proceeding and (2) whether the decision was against the manifest weight of the evidence.

It appears that at approximately 11 p.m. on August 27, 1971, two automobiles were parked in close proximity along the shore of Lake Michigan. One was occupied by Gregory McCarthy and Darlene Barnett and the other by plaintiff, an off-duty Chicago police officer, and his friend William Walls, who was relating the details of his marital problems. Eventually plaintiff approached the other automobile, ordered Gregory

to produce identification, and after some conversation drove off in the company of Darlene. Thirty to 45 minutes later plaintiff returned to the scene with her. Thereafter she and Gregory complained to police officials that she had been raped by plaintiff and that he had been robbed by Walls. Plaintiff was subsequently indicted and tried for rape, robbery and contributing to the delinquency of a minor, but was convicted only of the latter offense. His conviction was reversed on appeal and thereafter administrative proceedings were commenced which eventually resulted in his discharge from the Chicago Police Force.

At the hearing before the Chicago Police Board, Darlene and Gregory testified that when plaintiff approached their car he identified himself as a police officer, informed them that they were under arrest for engaging in sexual intercourse, ordered Darlene into his car and drove off with her while Walls remained with Gregory. Darlene further testified that after leaving the lakefront plaintiff drove for 15 minutes during which period she informed him that she was 16 years old and after questioning her regarding her feelings for Gregory, he then asked Darlene to have intercourse with him. When she refused he stopped the car in an alley, forcibly removed her clothing, and had sexual intercourse with her.

To the contrary, plaintiff testified that he and Darlene had not engaged in sexual intercourse. He stated that he approached the McCarthy car after observing that Darlene was disrobed above her waist and upon reaching the car saw that the couple were engaging in sexual intercourse. At this point he identified himself as a police officer, but did not arrest the couple indicating only that he wished to ask them a few questions. He further testified that Darlene was crying as she exited the vehicle and that he asked her to have a seat in his car. Moments later he returned to his car where Darlene informed him that she was 19 years old, had an illegitimate child, and lived with her aunt. As he believed parental guidance was called for he suggested that they telephone her aunt. After notifying Gregory that he and Darlene were leaving to make a phone call, plaintiff drove to a nearby gasoline station where Darlene begged him not to make the call as it would cause her expulsion from the house. Plaintiff agreed and returned with her to the lakefront and the company of Gregory.

Concerning the events at the lakefront during plaintiff's absence, Gregory testified that pursuant to a conversation with Walls[1] he gave all the money he had to Walls. He did not inform plaintiff of this fact on the latter's return, but did notice that Darlene was crying and that her hair and clothes were in disarray. After the departure of plaintiff, Darlene told him that she had been raped by plaintiff.

It appears that upon the complaint of Darlene and Gregory plaintiff was arrested in the early morning hours of August 28. Captain John

---

[1] Walls did not testify at the hearing before the Police Board.

Corless of the Chicago Police Department testified that after plaintiff was advised of his rights he signed waiver forms and requested an opportunity to tell Corless what had happened. During the course of two oral statements plaintiff stated that he had observed Darlene and Gregory having sexual intercourse in a parked car and informed them that they could be arrested for such conduct. Darlene then interjected that she would do anything to avoid arrest whereupon he asked if that included sexual intercourse. When Darlene replied affirmatively they left the scene and had sexual relations. At the hearing, however, plaintiff testified that he signed the waiver forms on pain of losing his job and denied making any statement to Captain Corless. Moreover, plaintiff's attorney argued that testimony regarding the statements was inadmissible before the Police Board as such evidence had been suppressed in the prior criminal proceeding on the ground that he was threatened with the loss of his job if he refused to make a statement.

During the course of the hearing a letter received by plaintiff while his criminal conviction appeal was pending was admitted into evidence. The letter stated in pertinent part:

"I know you're going to be surprised when you receive this letter.

I wanted to write this letter long ago. I've had a lot of sleepless nights thinking how you were found guilty of a crime you did not do.

I've made my mind up to tell the truth to the judge, the states attorney and to the police dept, you did not have a sexual intercourse with me that night.

Mr. Douglas, you were very nice to Gregory and me that night, but Greg just had bitter feelings toward you, and insisted that I say you raped me.

I love my husband[2] very much, but he is a very bitter and jealous man and I did as he wished.

Mr. Douglas you were very nice to me, and I'm sorry for me and Gregg that I said you raped me, when you did nothing but talked."

The letter was purportedly written by Darlene but at a hearing on plaintiff's petition for a writ of error *coram nobis* she refused to testify asserting her privilege against self-incrimination. The petition was denied, but on appeal the State confessed error and his criminal conviction was reversed and remanded for a new trial. Plaintiff, however, has not been retried.

At the Police Board hearing Darlene admitted writing the letter, but stated she did so at the direction of plaintiff and under a threat that members of her family would be harmed if she did not write it.

---

[2] Subsequent to the event in question Darlene and Gregory were married.

The Police Board found that plaintiff, in violation of the rules and regulations of the Department of Police, had (1) intimidated Darlene in such a manner as to coerce her into having sexual relations with him against her will; (2) willfully and for no authorized purpose detained Darlene for 45 minutes and permitted Walls to impersonate a police officer; (3) utilized his position as a police officer to engage in sexual intercourse with Darlene; (4) found Gregory and Darlene in violation of the law but failed to make an arrest or a report of said violation; (5) permitted Walls to obtain $11 from Gregory as a condition for not performing his sworn duty; and (6) accepted sexual favors from Darlene as a condition for not performing his sworn duty. Based upon these findings the Police Board discharged plaintiff from the force and upon administrative review of this matter (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) the trial court affirmed the decision of the Board.

OPINION

Plaintiff first contends that his admission which was suppressed in prior criminal proceedings brought against him is not admissible in the subsequent administrative proceeding. We must disagree.

■■■ The constitutional guarantee against self-incrimination does not by its terms insulate a witness from every possible detriment which may result from his testimony; "[r]ather, the cluase 'insure[s] that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime.' [Citations.] The Supreme Court has determined that the 'sole concern [of the self-incrimination clause] is, as its name indicates, with the danger to a witness forced to give testimony leading to the infliction of "penalties affixed to the criminal acts * * *." ' [Citations.]" (*Childs v. McCord* (D. Md. 1976), 420 F. Supp. 428, 432, *aff'd, Childs v. Schultz* (4th Cir. 1977), 556 F.2d 1178. Accord, *Kastigar v. United States* (1972), 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653; *Ullmann v. United States* (1956), 350 U.S. 422, 100 L. Ed. 511, 76 S. Ct. 497.) When the same conduct is the subject of a civil disciplinary hearing and a criminal proceeding, the two have been viewed as distinguishable in that the former focuses upon fitness to continue in a profession rather than the criminality of specific acts. (*Childs v. McCord.*) Compelled testimony may be used in civil disciplinary proceedings as such do not amount to criminal prosecutions. *In re Schwarz* (1972), 51 Ill. 2d 334, 282 N.E.2d 689, *cert. denied* (1973), 409 U.S. 1047, 34 L. Ed. 2d 499, 93 S. Ct. 527.

Before a police officer in a municipality of more than 500,000 may be discharged from the force, a hearing must be conducted to determine if such discharge is based upon cause. (Ill. Rev. Stat. 1977, ch. 24, par. 10—

1—18.1.) "The courts have construed 'cause' to be some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. [Citations.]" *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 441, 352 N.E.2d 389, 394, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.

Defendants contend that the merits of this issue may not be considered by this court because plaintiff failed his burden of establishing what had been decided in the criminal proceeding (see *Brownell v. Quinn* (1964), 47 Ill. App. 2d 206, 197 N.E.2d 721; *Woods v. Village of LaGrange Park* (1936), 287 Ill. App. 201, 4 N.E.2d 764), and the Police Board was not bound to take judicial notice of the circuit court's ruling. (See *People ex rel. McCallister v. Keokuk & Hamilton Bridge Co.* (1919), 287 Ill. 246, 122 N.E. 467; *People ex rel. Zilm v. Carr* (1914), 265 Ill. 220, 106 N.E. 801.) As we believe here that the Board ruled correctly in any event, the question of whether or not plaintiff properly presented the matter need not be decided.

■■ Plaintiff's attorney stated before the Police Board that the purported oral statements were compelled by a threat that he would lose his job if he failed to make a statement and for this reason the statements were suppressed in the prior criminal proceedings. Thus, he argues that the statements were also inadmissible in the instant administrative proceeding. In this regard it should be noted that plaintiff testified that he made no such statements rather than claiming that they were coerced. In any event, even assuming that the statements were suppressed on the basis that they were compelled, the suppression order while effectuating plaintiff's privilege against self-incrimination in a criminal proceeding did not operate to foreclose their admissibility in an administrative proceeding which does not affix penalties for criminal conduct. As the focus of the proceedings below was upon the fitness of plaintiff to continue to function as a police officer rather than to penalize certain prior conduct because of its criminality, the suppression order cannot be viewed as extending to the instant proceedings. (*Childs v. McCord; In re Schwarz.*) Therefore, we find no error in the admission of testimony concerning plaintiff's oral statements.

Plaintiff next contends that the decision was against the manifest weight of the evidence. Again we disagree.

We have recently stated that:

> "In disciplinary proceedings against a police officer, a single valid finding of a violation of departmental rules will authorize dismissal. (*Noro v. Police Board* (1977), 47 Ill. App. 3d 872, 365 N.E.2d 419; *Thanasouras v. Police Board* (1975), 33 Ill. App. 3d

1012, 339 N.E.2d 504, *cert. denied* (1976), 429 U.S. 851, 50 L. Ed. 2d 125, 97 S. Ct. 141; *Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32.) On review, the scope of our inquiry, as it was in the trial court, is limited to ascertaining whether the agency's findings were contrary to the manifest weight of the evidence (*Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 731, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229), and an agency's findings may not be so adjudged unless, from the record, it appears that the opposite conclusion is clearly evident (*Goslin v. Zoning Board of Appeals* (1976), 40 Ill. App. 3d 40, 351 N.E.2d 299; *Bock v. Long* (1972), 3 Ill. App. 3d 691, 279 N.E.2d 464). Moreover, the findings and conclusions of the Board on questions of fact are to be considered prima facie true and correct. Ill. Rev. Stat. 1977, ch. 110, par. 274." *King v. City of Chicago* (1978), 60 Ill. App. 3d 504, 508-09, 377 N.E.2d 102, 106.

■■ Here, according to plaintiff's testimony, he observed Darlene and Gregory engaging in sexual intercourse in a car parked in an area open to public view, but did not arrest either or make a report of the incident. Such testimony, in our opinion, supports the Board's finding that he failed to perform his duty in violation of police department rules and regulations.

So also do we find the support for the Board's findings that plaintiff had (1) intimidated Darlene in such a manner as to coerce her into having sexual relations with him against her will; (2) utilized his position as a police officer to engage in sexual intercourse with Darlene; and (3) accepted sexual favors from Darlene as a condition for not performing his sworn duty rests almost exclusively upon the credibility of the witnesses. The assessment of the credibility of the witnesses is a matter for the trier of fact who observed their demeanor (*Hruby v. Board of Fire & Police Commissioners* (1974), 22 Ill. App. 3d 445, 318 N.E.2d 132; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814), and to view such an assessment as erroneous there must be something more than the mere existence of conflicting testimony (*Legones v. License Appeal Commission* (1968), 100 Ill. App. 2d 394, 241 N.E.2d 499). In the instant case, the Board could have believed that Darlene's letter stating that plaintiff had only talked to her on the night in question was written under duress and that she testified truthfully to the occurrence of sexual relations. Moreover, the Board could also have found the version of the incident contained in plaintiff's oral statements to Captain Corless more credible than his testimony that sexual relations did not take place. According to plaintiff's prehearing admission it was he who suggested

sexual intercourse as a means by which Darlene could avoid arrest. Her testimony was to the effect that she did not agree to submit to plaintiff's advances yet her testimony did indicate that upon his authority as a police officer plaintiff ordered her into his automobile and that she remained in the car with the belief that she was under arrest. Whether under the circumstances, Darlene to the extent necessary to avoid arrest willingly engaged in sexual intercourse with plaintiff or felt coerced into doing so because she was in an alley late at night with a person who possessed the power of arrest, we believe such evidence is supportive rather than contrary to the above findings.

Regarding the findings that plaintiff permitted Walls to impersonate a police officer and to obtain $11 from Gregory as a condition for not performing his sworn duty, we must agree that they are contrary to the manifest weight of the evidence. The record reveals no affirmative act on plaintiff's part to indicate that Walls was a police officer other than the neutral fact that Walls was his companion nor is there any indication that plaintiff knew that Walls had received $11 from Gregory.

While it is true that where only the less serious findings of the Board are sustained on appeal, the cause should be remanded to determine whether the lesser charges in themselves are cause for discharge. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371.) We will not remand as we cannot say that the charges sustained by the evidence were of a lesser stature than those not sustained. To the contrary we believe the record reveals acts which render plaintiff's continuance as a police officer detrimental to the discipline and efficiency of the service.

For the reasons stated the judgment appealed from is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.